# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| JOSEPH BONAR, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-1185 |
| MARK RAY, BERWICK BLACK CATTLE COMPANY, WARD FEED YARD, INC., and ILS FINANCING, INC., | ) |
| Defendants. | ) |

## O P I N I O N and O R D E R

Before the Court are the Motion for Default Judgment filed by Plaintiffs (Doc. 18), the Motion for Reconsideration filed by Plaintiffs (Doc. 21), and the Motion to Dismiss filed by Defendants ILS Financing, Inc. and Ward Feed Yard, Inc. For the reasons set forth below, the Motion for Default Judgment is DENIED WITHOUT PREJUDICE, the Motion for Reconsideration is GRANTED, and the Motion to Dismiss is GRANTED IN PART.

### BACKGROUND

Plaintiff's Amended Complaint (Doc. 20) alleges that Defendants Mark Ray and Berwick Black Cattle Company, (collectively referred to as the "Ray Parties"), engaged in a so-called "ponzi scheme" when they solicited and accepted investments from Plaintiff in their cattle raising business. The claims made by Plaintiff were the subject of a previous Motion to Dismiss and an Order entered on March 17, 2010 (Doc. 17) (hereinafter "previous Order"). The Amended Complaint attempts to

cure pleading deficiencies highlighted by the Court. These deficiencies primarily related to confusion as to the relationship between Defendants.

In the Amended Complaint, Plaintiff essentially asserts that the Ray Parties are alter egos of each other and that Defendant Ward Feed Yard, Inc. ("Ward") is the alter ego of the Ray Parties. Plaintiff further alleges that Defendants Ward and ILS Financing, Inc. ("ILS") are wholly owned subsidiaries of WFY Holding Co. ("WFY"). Additionally Plaintiff alleges that ILS assumed Ward's role in financing the Ray Parties' cattle operation in late 2005, thereby becoming liable for any damages that may be imposed against Ward in this case. Count I of the Amended Complaint alleges that the Ray Parties committed fraud, and Count II alleges that the Ray Parties breached contracts, namely written guarantees given Plaintiff respect to the investments and the partnership arrangements, by failing to make timely principal and interest payments. Count III is an alter ego claim directed against Ward. Plaintiff specifically alleges that during a "control period," (June 2005 to December 2006), Ward "exercised such substantial   dominion and control over the business and financial affairs of the Ray Parties . . . that the Ray Parties became the alter egos and mere instrumentalities of Ward." Count IV alleges a state law claim pursuant to Illinois' Fraudulent Transfer Act directed against Ward. Finally, Count V alleges successor liability against ILS.

The Ray Parties have not entered an appearance in this action, and entry of default was entered on September 30, 2010. In their Motion to Dismiss, Ward and

ILS essentially argue that Plaintiff's Amended Complaint failed to comply with this Court's previous order of dismissal.

In that previous Order, this Court found that Plaintiff had sufficiently plead a "unity of interest and ownership" and the "promotion of injustice," *Gass v. Anna Hosp. Corp.*, 911 N.E.2d 1084, 1091 (Ill. App. Ct. 2009); *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519, 524 (7th Cir. 1991), and thus had sufficiently stated an alter ego breach of contract claim but not a fraud claim against Ward. However, this Court found that Plaintiff failed to state an alter ego based claim against ILS (and other Defendants named in the previous Complaint), and had failed to outline the relationship between Ray and Berwick. Plaintiff was then ordered to file more definite statements outlining these relationships.[1] This Court further noted that an "alter ego" claim is not freestanding but merely a means of imposing liability on underlying claims, namely the fraud and breach of contract claims. *See Peetoom v. Swanson*, 778 N.E.2d 291, 295 (Ill. App.Ct. 2002). The import of this observation is that a freestanding alter ego claim is not viable. And, while Plaintiff may assert that Ward is liable, under an alter ego theory, with respect to the breach of contract claim, his fraud claim was generally vague and was insufficient to allow a reasonable inference that liability would attach to Ward on an alter ego theory.[2]

---

[1] To cure these deficiencies, Plaintiff has outlined the alter ego status of Ray vis-à-vis Berwick and has elected to drop allegations that ILS and other original Defendants are alter egos of the Ray Parties.

[2] To cure the later deficiency, Plaintiff has elected to not proceed against Ward as the alter ego of the Ray Parties on this fraud claim.

3

Thus, Plaintiff was given leave to re-plead the fraud claim consistent with Federal Rule of Civil Procedure 9, that is, he was directed to plead fraud with particularity. Finally, with respect to the state law fraudulent transfer claims, this Court found that Plaintiff's claims against ILS and other original Defendants were vague and insufficiently pled. Plaintiff was directed to file a more definite statement.[3] With respect to Ward, this Court found that Plaintiff's claims arise from the "insider preferences" clause of Illinois' Fraudulent Transfer Act (UFTA). 740 ILL. COMP. STAT. § 160/6(b), and that Plaintiff sufficiently stated a cause of action. However, this Court found that the claim was time-barred. In summary, this Court directed Plaintiff to provide a more definite statement with respect to each of the Counts in a manner consistent with the holdings of the previous Order.

Each Count and argument will now be taken in turn.

## DISCUSSION

## Motion to Dismiss

### I. Count I: Fraud Against The Ray Parties

In Count I, Plaintiff has elected to only proceed against the Ray Parties and not against Ward and ILS. In this claim, Plaintiff asserts that:

> The Ray Parties' representations to plaintiff, directly and through Mr. Throgmartin, that the funds plaintiff sent to the Ray Parties during the period roughly late 2004 through September 2005 were being used to purchase cattle through cattle partnerships were untrue. (Amended Comp. ¶ 62).

---

[3] To cure this deficiency, Plaintiff has not asserted any such claims against ILS or any other original Defendant in the Amended Complaint.

4

Plaintiff goes on to allege that the statements were untrue, that Plaintiff had a right to rely on the statements, and that he in fact reasonably relied on these statements to his detriment. (Am. Comp. ¶¶ 63, 65, 66). The alleged misrepresentations are described as follows:

> By a memorandum dated February 11, 2004, and in numerous discussions thereafter with plaintiff, Mr. Ray explained to plaintiff, and Mr. Throgmartin confirmed, that the partnership investments would be short term investments in which the Ray Parties would act as partners in the partnership arrangements, would purchase the cattle on behalf of the partnerships, would resell the cattle within a matter of weeks or a few months, and then would return the principal investments, together with, in some cases, profits from the cattle sales, and in other instances, interest on the funds. (Am. Comp. ¶ 17).

Instead of following through with these representations, Plaintiff alleges that Ray and Berwick used funds acquired from Plaintiff for their own benefit or to pay other creditors. (Am. Comp. ¶ 25).

By making these assertions, Plaintiff seems to make out a common law fraud claim and to dispel this Court's confusion as indicated in footnote 4 of the previous Order. In order to prevail on a common law fraud claim, Plaintiff must show:

> (1) a false statement of material fact; (2) knowledge that the statement was false; (3) intent that the statement induce another to act; (4) reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Linhart v. Bridgeview Creek Development, Inc.*, 909 N.E.2d 865, 870 (Ill. App. Ct. 2009).

Such a claim necessarily includes a material misrepresentation of an existing fact. *Napcor Corp. v. JP Morgan Chase Bank, NA*, 938 N.E.2d 1181, 1188 (Ill. App. Ct. 2010). Thus, "[s]tatements concerning future intent or conduct are not actionable as fraud." *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of*

5

*Southern Metro-East*, 884 N.E.2d 700, 723 (Ill. App. Ct. 2008). To the extent, then, that Plaintiff is alleging that the Ray Parties made promises regarding how his investment would be used, Plaintiff has failed to state a general common law fraud claim.

However, in *Roda v. Berko*, 81 N.E.2d 912 (Ill. 1948), the Illinois Supreme Court recognized an exception to this rule and stated that:

> However, in cases where the false promise or representation of intention or of future conduct is the scheme or device to accomplish the fraud and thereby cheat and defraud another of his property, equity will right the wrong by restoring the parties to the positions they occupied before the fraud was committed. *Id.* at 1948; *See also HIP Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682-683 (Ill. 1989) ("promissory fraud").

In this sense, Plaintiff has alleged that Ray and Berwick made statements as part of a scheme to induce Plaintiff to continue to make investments thus cheating and defrauding him. Of course, the damages that are available to Plaintiff are not necessarily those claimed but rather restoration of Plaintiff to a position prior to the alleged fraud.

With this in mind, Plaintiff still must comply with Federal Rule of Civil Procedure 9(b) and plead fraud with particularity: i.e. the "who, what, when, where and how of the alleged fraud." *Rao v. BP Products North America, Inc.*, 589 F.3d 389, 401 (7th Cir. 2009). In light of a clearer understanding of Plaintiff's claim, the Court finds that Plaintiff has complied with Rule 9. Plaintiff alleges that in February 2004, Ray and Throgmartin made statements and provided a written document that made representations as to how Plaintiff's investments would be

used when they knew that it would be used for other purposes. Count I, therefore, will not be dismissed at this time.

**II. Count II: Breach of Contract Against The Ray Parties**

There is no argument that this Count should be dismissed.

**III. Count III: Alter Ego Claim against Ward**

This Court previously has held that a claim that Ward is acting as Ray and Berwick's alter ego is not a free-standing claim but rather an equitable means of extracting damages from Ward. As pled in the Amended Complaint, this Count alleges a breach of contract claim against Ward on the basis that Ward is the alter ego of the Ray Parties. Therefore, the phrase "Count III: Alter Ego Against Ward" is hereby construed to mean "Count III: Breach of Contract Against Ward – Alter Ego Theory."

The Court's finding in the previous Order of March 17, 2010, that Plaintiff's allegations were sufficient to state a breach of contract claim against Ward on an alter ego theory, was erroneous. Contrary to the Court's earlier reasoning, merely alleging that Ward ran the business operations of the Ray Parties is not enough to satisfy the pleading requirements of Rule 8(a) as interpreted by *Bell Atlantic Corp. v. Twomby*, 127 S.Ct. 1955, 1964-1965 (2007), and its progeny. Although under federal notice pleading, Plaintiff is not required to plead extensive facts, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twomby* at 1965.

7

In order to plead an alter ego theory, Plaintiff must plead sufficient facts to permit a reasonable inference that such a unity of interest and ownership existed between the Ray Parties and Ward to justify disregarding their separate identities and treating both entities as a single entity. In applying this test, there are various factors to consider as explained in *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct. 2005) and *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.3d 565, 569-570 (7th Cir. 1985). The Court does not consider it necessary to plead each of the qualifying factors; however, more must be alleged than the mere conclusory allegation in the Amended Complaint that "Ward, through Mr. Brock, exercised such substantial exercise of dominion and control over the business and financial affairs of the Ray Parties – including making decisions regarding the expenses, vendors, and creditors to be paid; the manner, timing, and priority of said payments; and the purchase, sale, breeding, and care of Mr. Ray's cattle operations – that the Ray Parties became the alter egos and mere instrumentalities of Ward." (Amended Comp. ¶ 81). This conclusory allegation does nothing more than lead to the inference that Ward acted as some sort of Chief Operating Officer. In addition, no alter ego liability can be imposed on Ward for the obligations of the Ray Parties based on the allegation that "Ward changed its relationship with Berwick from a mere customer-lender relationship to one in which Ward financed, advanced and paid for all aspects of Berwick's business operations." This changed relationship sounds in contract, suggesting that some deal was struck between the parties. Alter ego is not a doctrine of liability that can be transferred from one entity to

8

another through contract. Regardless, there are not sufficient facts pled to allow the Court to reasonably infer the theory of alter ego and a plausible claim against Ward either for breach of contract or fraud.[4]

## IV. Count IV: UFTA

In his Motion to Reconsider, Plaintiff urges the Court to reconsider the dismissal, with prejudice, of this claim against Ward. Plaintiff does not indicate under what Rule of Civil Procedure he is filing this Motion. The Court assumes Plaintiff is seeking reconsideration pursuant to Rule 60 as the Motion was filed more than 10 days after the previous Order was entered. The Court further finds that Plaintiff must be seeking relief pursuant to Rule 60(b)(6). Plaintiff must, therefore, show "extraordinary circumstances" that would warrant reopening of this issue. *See Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006). Plaintiff essentially asserts that this Court made a manifest error of law and that, in light of Rule 15's liberal amendment scheme, he should be allowed to present further argument as to why his fraudulent transfer claim against Ward should move forward.

---

[4] Plaintiff must recognize the distinction the Court is drawing with respect to his claim that the Ray parties are the alter egos of each other and the claim that Ward is the alter ego of the Ray parties. In paragraph 4 of the Amended Complaint, Plaintiff goes into significant, and appropriate, detail regarding the type of commingling of assets and records that are the hallmark of a typical alter ego scenario. However, in discussing the relationship between the Ray Parties and Ward, Plaintiff, at most, is alleging that Ward merely ran and paid for all aspects of Berwick's business. The mere fact that Ward made decisions for Berwick does not lead to the inference that Ward is the alter ego of Berwick. There is no allegation that their business affairs were commingled, that corporate formalities were not observed, or that the Ray Parties were mere facades of Ward's business.

In support, Plaintiff now argues that the intervening bankruptcy of Berwick and Ray tolled the limitations period on this claim and renders it timely.

The UFTA provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. 740 Ill. Comp. Stat. §160/6(b).

As relief, a creditor may seek avoidance of the transfer, attachment of the asset transferred, and/or other equitable relief. *Id.* at § 160/8. A claim, however, "is extinguished unless action is brought . . . within one year after the transfer was made or the obligation was incurred." *Id.* at § 160/10(c). The Amended Complaint outlines that Ward was an insider, that the transfers were made by Berwick and Ray (via Ward, its alter ego) to Ward for a debt that arose around June 1, 2005 (which is after the time when Plaintiff made most of his investments with Berwick and Ward) in an amount in excess of $1.5 million. These transfers were allegedly made from April 20, 2006 to December 26, 2006. Ward's and Berwick's involuntary bankruptcy petitions, pursuant to Chapter 11, were filed on December 26, 2006 and they did not emerge from bankruptcy until January 15, 2009. Plaintiff filed his original complaint on May 26, 2009. If the intervening bankruptcy did not toll the 1 year limitations period, then Plaintiff's claim is time-barred. If the intervening bankruptcy did toll the 1 year limitations period, then Plaintiff's claim, as to a majority of the transfers would not be time-barred.

Title 11 U.S.C. § 362 provides that a Petition filed under § 303 (i.e. involuntary Chapter 11 Petition) of the code "operates as a stay, applicable to all entities of, --

> **1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> **(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> **(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> **(4)** any act to create, perfect, or enforce any lien against property of the estate;
>
> **(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> **(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
>
> **(8)** the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

Plaintiff argues that "the automatic stay clearly would have barred plaintiff from pursuing his fraudulent transfer claims against Ward during the Ray Parties' bankruptcy cases." Plaintiff further cites to an Illinois statute that states that "[w]hen the commencement of an action is stayed by . . . .statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." 735 ILL. COMP. STAT. 5/13-216.

In *Matter of Fletcher*, 176 B.R. 445 (W.D.Mich. 1995), the bankruptcy Court indicated that a creditor's fraudulent transfer claim against a third-party related to property that was transferred from a debtor is subject to the automatic bankruptcy stay because either the debtor has an equity interest in the property because such a claim is essentially made against the debtor. *Id.* at 453. Plaintiff does not point out, however, that this bankruptcy case was reversed on appeal to the District Court; the reversal, however, was unrelated to the holding that is relevant to this case. *See In re Van Orden*, 1995 WL 17903731 (W.D.Mich. 1995). The Fifth Circuit Court of Appeals further has held:

> An action under the Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors . . . . The transferee may have colorable title to the property, but the equitable interest – at least as far as the creditors (but not the debtor) are concerned – is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it. . . . The automatic stay under section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed. *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983).

Based on this authority, Plaintiff asserts that a bankruptcy stay pursuant to § 362, which by its plain terms only refers to the debtor or the debtors estate, would apply to claims against a third party, Ward.

However, recent case authority has cast doubt on the holding in *MortgageAmerica*. In *In re Fehrs*, 391 B.R. 53 (D.Idaho 2008), the bankruptcy court found convincing a line of authority that holds that transferred property does not become "property of the bankruptcy estate" until the transfer has been voided. *Id.* at 72; *See In re Saunders*, 101 B.R. 303, 304-305 (N.D.Fla. 1989) (specifically holding that a "state court fraudulent transfer action against a third party is [not] stayed by § 362(a)(3) of the Bankruptcy Code.");[5] *See also In re Colonial Realty Co.*, 980 F.2d 125, 130-31 (2nd Cir. 1992); *In re Murray*, 214 B.R. 271, 278-279 (D.Mass. 1997).

An extensive detour into bankruptcy law, however, is unnecessary. This Court finds convincing the *In re Saunders* conclusion that § 362(a)(1) would automatically stay any action by Plaintiff against Ward pursuant to the UFTA. In that case, the Court noted:

---

[5] The Court based its decision on 11 U.S.C. § 541 which defines "property of the estate." Such an estate includes property "by whomever held" in which the debtor has a "legal or equitable interest." *Id.* at § 541(a)(1). This subsection was relied on by the *MortgageAmerica* Court in determining that the debtor has an equitable interest in fraudulently transferred property. The *In re Saunders* Court noted that the code section continues to provide that the bankruptcy estate also includes property "that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723." *Id.* at § 541(a)(3). Title 11 U.S.C. § 550 allows the trustee to recover fraudulently transferred property. *See* 11 U.S.C. §§ 554 and 548. Thus, reliance on § 541(a)(1) to cover fraudulently transferred property would render § 541(a)(3) meaningless, which could not be Congress' intent. *In re Saunders*, 101 B.R. at 305.

13

> On its face, however, § 362(a)(1) stays not only any action or proceeding "against the debtor" but also actions "to recover a claim against the debtor." While a fraudulent transfer action may be an action against a third party, it is also an action "to recover a claim against the debtor." Absent a claim against the debtor, there is no independent basis for the action against the transferee. Moreover, the creditor can only recover property or value thereof received from the debtor sufficient to satisfy the creditor's claim against the debtor. This interpretation is consistent with the legislative history of § 362(a)(1) which states:
>
> The provision in this first paragraph prohibiting the issuance of process is designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain property that was property of the debtor before the case but that was transferred, subject to the judgment lien, before the case. Because the other paragraphs of this subsection refer only to property of the estate or property of the debtor, neither of which apply to this kind of transferred property, they would not prohibit pursuit of the transferred property by issuance of process. (emphasis supplied).
>
> H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 341 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297. Thus, § 362(a)(1) operates to stay a creditor with a claim against the debtor from commencing or continuing a fraudulent transfer action or from utilizing the process of another court, as is the situation in this case, to recover that claim from property that should have been available for levy and execution but for the transfer to a third party in fraud of creditors.

*Id.* at 305-306; *See also In re Colonial Realty Co.*, 980 F.2d at 132; *In re Zwirn*, 362 B.R. 536 (S.D.Fla. 2007) ("commencing a bankruptcy case stays any state court fraudulent conveyance actions by a creditor"). If the automatic bankruptcy stay did not apply to Plaintiff's claim against Ward, it may lead to the untenable result of having a bankruptcy trustee competing with creditors to assert fraudulent transfer claims. Such an eventuality would run counter to the whole purpose of holding claims against a debtor in abeyance. Therefore, this Court previous ruling that the

UFTA claim against Ward is dismissed is VACATED and Plaintiff may proceed on this claim.

## V. Count V: Successor Liability as to ILS

In this Count, Plaintiff asserts that "[a]s part of an on account of the merger and restructuring of Ward, ILS and Ward alleged above, ILS assumed liability for, and became liable for, among other things, Ward's liability as the alter ego of the Ray Parties and for the Preferences." (Am. Comp. ¶ 92). Elsewhere in the Amended Complaint, Plaintiff asserts that ILS and Ward merged in 2005 and became wholly owned subsidiaries of Ward Holding Company (which is not a party to the current lawsuit). Plaintiff goes onto argue that pursuant to a Kansas statute (both Ward and ILS are Kansas corporations), "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to such surviving or resulting corporation." KANSAS.STAT. § 17-6709(a). Thus, Plaintiff is not claiming that ILS is an alter ego of Ward or Ray and Berwick; rather, based on the Kansas statute, Plaintiff asserts that any judgment entered against Ward would be payable by ILS, much like indemnification. This Count, therefore, will not be dismissed.

### Motion for Default Judgment

The Court finds that the issue of liability and damages are sufficiently intertwined vis-à-vis Ray, Berwick, Ward, and ILS that an entry of default judgment for damages at this time would be impractical. Judgment must await a ruling on the merits of this matter and the presentation of evidence to support damages as part of Plaintiff's claims.

15

CONCLUSION

For the foregoing reasons, the Motion for Default Judgment filed by Plaintiffs (Doc. 18) is DENIED WITHOUT PREJUDICE, the Motion for Reconsideration filed by Plaintiffs (Doc. 21) is GRANTED, and the Motion to Dismiss filed by Defendants ILS Financing, Inc. and Ward Feed Yard, Inc (Doc. 26) is GRANTED IN PART and DENIED IN PART.

The Motion to Dismiss is GRANTED with respect to "Count III: Breach of Contract Against Ward – Alter Ego Theory" which is DISMISSED WITHOUT PREJUDICE. Plaintiff is GRANTED leave to file an Amended Complaint, within ten (10) days of the date of this Order, and replead this Count consistent with the Court's rulings herein. The Court would remind Plaintiff that pursuant to Rule 11(b)(3), any factual contentions should "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." The March 16, 2010 Order is VACATED IN PART with respect to dismissal of Plaintiff's UFTA claim and to the extent that it is inconsistent with this Order. The Motion to Dismiss is DENIED with respect to Counts I, IV, and V.

This matter is referred to the Magistrate Judge for further proceedings. Entered this 21st day of March, 2011.

    s/ Joe B. McDade
    JOE BILLY MCDADE
    United States Senior District Judge